Good morning, Your Honors. My name is David Hsu, counsel for Petitioner. May it please the Court. In this case, the BIA denied Petitioner's asylum application solely on the ground that he submitted a fake ID card. This Court's review is limited to the BIA's decision because in this case, the BIA did not adopt any part of the ID's decision. It made a de novo fact finding and made a decision and cited two cases referring to false ID in those cases. So it's apparently the BIA's decision that Petitioner is not credible because he submitted an ID card, which is found to be a counterfeit. In our brief, we have cited this Court's decision in Chen v. INS, and I believe this case is, the fact in this case is very similar with the fact in that case. First of all, the Petitioner here provided an adequate testimony regarding the ID card, and his testimony is straightforward. He denied that it is a fake ID, and he testified how and when he obtained the ID. So the fact here is like the case in Chen v. INS. Secondly — Isn't what you just said an indication of one of the differences from Chen? I mean, in this case, your client said that he thought it was a genuine identification. He got it from the government. He'd always used it. In Chen, the Court points out that describes Chen as being forthright and says when he was asked whether he knew the original birth certificate was fraudulent, he testified he did not know. And perhaps his relatives had made a mistake. So Chen wasn't trying to vouch for the document that was found to be counterfeit. Your client did vouch for the document that was found to be counterfeit. Isn't that a difference? Yes, that's correct, Your Honor, but I don't think it makes any difference. Petitioner here, his testimony is the document is genuine, and his testimony is not found to be evasive, just like in the case in Chen. So I don't think — Your client says it's genuine. Yes, Your Honor. You ask us to take your client's word for it and to say that that evidence compels the conclusion you seek, but why can't the IJ and the BIA properly rely upon the forensic report that the card is counterfeit? Your Honor, there are other issues in this case. First, the forensic report itself is not conclusive. Even the report itself said the cover of the I.D. card is genuine. There's no evidence of alteration or evidence that cover is from another I.D. So I believe even based on the forensic report, the IJ could find that the I.D. is genuine because we found it. No, he didn't find it. He could find that the I.D. is genuine, but is he compelled to find that the I.G. is genuine? He's got a report that says that the card itself is counterfeit, that the laminate appears to be genuine. So the evidence is inconsistent, but we have inconsistent evidence all the time. What in inconsistent evidence compels the conclusion that the card must be genuine? No, Your Honor. I'm sorry. I agree with the court. The I.J. was not compelled to find the I.D. is genuine, but the evidence does not compel finding that the I.D. is counterfeit. But that's not the standard. It is. We don't sustain the agency's decision only if the evidence compels the agency's result. It's just the opposite. We will find the agency's decision supported by substantial evidence unless the evidence compels an opposite result. And here you've conceded that the evidence does not compel an opposite result. That's correct, Your Honor. But even if the I.D. is found to be counterfeit and the I.D. has a proper basis for that funding, the I.D. is not evidence that goes to the heart of a Petitioner's Asylum application. But there is a sort of a slightly different way to look at it, and that is if the I.J. concluded not only that the identification was counterfeit, but also that the Petitioner lied during the hearing when he said otherwise, it isn't just the fraudulent I.D. that's the issue. It's the fact that he's found to have lied in testimony under oath at the hearing. And why wouldn't that be a basis for an adverse credibility finding? Your Honor, first of all, Petitioner has no reason to lie about his I.D. He has submitted other documents to show his identity. And those documents, I believe, go to the heart of his asylum claim. His claim is he married to his wife and had a son, and after the birth of the son, his wife was forced to undergo an abortion and sterilization. And he submitted a family registry, a marriage certificate, a birth certificate of his son, and also a family photograph. Those documents, if found fraudulent documents, I would agree that the I.J. would have a better basis for adverse credibility finding. But in this case, it is the I.D. card, which is only for the purpose of Petitioner submitted that I.D. card, only for the purpose to establish his own identity. Just like the case in Chen. So I believe there's no evidence, or at least Petitioner has no reason to lie about the I.D. card. It could be a fake I.D. card, but he himself did not know that it is a fake I.D. card. He obtained it from the government. And that's what he testified in court. And his testimony is not true. How can we be sure who he is? I mean, the other evidence he submitted, you mentioned the birth certificate, and the forensic report itself says those documents have limited value. Other identification, I mean, I can have a family photograph, but I can pose with a couple of people and that doesn't establish who the family is anyway. What is there that really tells us who he is? Your Honor, the marriage certificate also has a photo of respondent and his wife. And also the family registry, both the marriage certificate and the family registry are not notarial certificates, are not notarized certificates. They are original documents issued by the Chinese government. So in our brief, we point out the I.D.'s finding is incorrect. It's a year, as a matter of fact, when the I.D. said that all other documents are notarial certificates. They are not. At least the family registry and the marriage certificate are documents issued by the government. Did you wish to save a little rebuttal time? You have about a minute and a half left. Yes, Your Honor. Thank you. We will hear now from the government. Thank you. Good morning, and may it please the Court. Katherine Hahn for the United States. I think the panel was focusing here on the fact that there was a fake I.D. and the government submits that the fact of the counterfeit I.D. is in itself sufficient. But I did want to just mention I heard Mr. Lin's counsel say that the I.J. or the BIA solely denied on the basis of the counterfeit evidence, and that is not the case. There was also the I.J. found conflicting testimony. Why would we rely at all on the I.J.'s testimony? I mean, the I.J.'s reasoning here. The BIA did not adopt the I.J.'s opinion but wrote its own opinion. Isn't that the only thing we review? We do. The Court would review just the BIA opinion, but if you look to the text of the BIA opinion, it does specifically say it agrees with the immigration judge about the credibility finding. We agree with the outcome reached by the immigration judge and goes on to talk about credibility, but that's all it talks about. That is true, Your Honor. On the other hand, as is the case often when the BIA wants to limit its agreement, it will say to the extent that the immigration judge, and then it will go on. But in any event, I'd like to focus back on the counterfeit evidence. Yes. How do you reconcile this with Chen and its assertion that in general a fraudulent identification document doesn't necessarily go to the heart of the claim? Well, I think this Court's cases have made very clear that there are two kinds of analysis that go on where there's a counterfeit document issue. The first is where a petitioner would present counterfeit documents to gain access, kind of fleeing persecution, fleeing the country there. And this Court's cases, for example, in Yemeni have held that those kind of documents cannot support an adverse credibility finding. However, the second rule that this Court's cases, for example, in Akinmati or in Chen, have recognized that where a petitioner submits counterfeit evidence in support of the actual asylum application itself, a different rule applies, and that identification does always go to the heart of an asylum claim. In fact, the BIA, in matter of OD, which is cited in the briefs, relying on night circuit precedent, makes clear that an essential element of an asylum claim is the party's identification. And I think as Judge Clifton recognized, there's not a whole lot of other evidence in this record, certainly not that would compel an alternative finding. But even in the first instance, there's not a lot of other evidence about the petitioner's identity. Judge Clifton mentioned a photograph. I mean, the photograph does not establish that the petitioner is even Chinese, much less who he is. On the record, page AR220, there are some other identification documents. Is his origin in China a contested fact? I thought it was not contested. It's not a contested fact that his identity is a contested fact. And, for example, certain identification documents of the petitioner introduced didn't even have a photograph. That's true, as I mentioned, for the exhibit at AR220. So here I think the identification card is very, very important. Well, there were other things, though. I mean, he did identify, and we've been told that at least the household registry and the marriage certificate are both government-issued documents. Is there reason to be suspicious that he's not Wo Song Min, that it's somebody else? The government submits that he has not met his burden to establish that he is who he purports to be. And I think also, Judge Graber, you mentioned at the outset of the petitioner's argument, you mentioned that – sorry. Well, let me ask you a slightly different question here. The I.J. in this case was, in some places, very impatient and disrespectful toward this petitioner. And I wondered, in my own mind, two things. One, whether that's one reason why the V.I.A. approved the outcome, but not the reasoning of the I.J. And also, the second question, and really the question for you, is what effect, if any, should that have on our assessment of the agency's findings and conclusions? Are you asking whether or not the court should consider only? No. I think we have to consider only the V.I.A.'s findings, because it wrote its own opinion. That's what I think our law says. I'm speaking only for myself. But I'm wondering whether the I.J.'s way of managing this hearing plays any role in our analysis. There's not a separate due process claim here. So maybe the right answer is no, but it does concern me, and I'd like you to comment on it. I think the right answer is no. I think that the sense that one gets from reading the transcript is that there were a lot of inconsistencies. Not all of those were mentioned in the I.J.'s oral decision, much less in the V.I.A.'s decision, but there were a number of inconsistencies over dates concerning when the petitioners. We can't consider those, though, because the V.I.A. didn't rely on them. And if Ventura teaches us anything, it's not to meddle where the V.I.A. hasn't already made a decision on a particular basis. My concern actually comes from the opposite end, which is whether this I.J. really adequately gave the petitioner an opportunity to present his case. I'm telling him things like, you know, if you don't speak up, I'm going to keep you in custody for four more months. Your Honor, I mean, first of all, I think you recognize there is no due process claim here. So the government would submit the answer to your question is no. But just to comment briefly on a little more why that is, I think the I.J. here gave the petitioner ample opportunity. He asked him directly, where did you get this document? When did you get this document? How many times have you used this document? And I think that is revealed if you look in the record at pages A.R. 51 to 52, perhaps even A.R. 50 to 52. And I think that he gave him ample opportunity to explain the origins of this document. He also put petitioner on notice very clearly that he suspected the document was counterfeit and asked petitioner to explain that. So I do think that the immigration judge here gave the petitioner an ample and a fair opportunity. And, again, I believe it's on the immigration judge's decision at A.R. 51 where he himself says he gave him an ample opportunity. Now, of course, that's just the immigration judge's own assessment. But I think if you look at the testimony on that exchange about the counterfeit I.D., I think you'll see that the petitioner was afforded a substantial opportunity to discuss the origins of that document. And getting back to your earlier question about how do we know this goes to the heart of the claim, again, this Court's cases have pretty clearly held that an adverse credibility determination can rest on a counterfeit document, even on a single counterfeit document, where it's presented in support of an asylum application. So that's why I would distinguish cases such as Yemeni-Bure, which is cited, I believe, in the petitioner's brief. And I would distinguish those cases because also in Akinmati, Judge Reinhart writing for this Court very clearly made the distinction that, no, you can't rely at rest an adverse credibility determination where it's the petitioner who's introducing fake documents at the airport to escape persecution, literally on the heels of that persecution. But there is quite a different rule where there's an asylum application and the petitioner supports or introduces counterfeit evidence. And I think, Judge Graber, on the point you mentioned earlier, this is what I was trying to remember when I couldn't recall, it's not just the fact that the petitioner here introduced counterfeit evidence. And that is, quite frankly, it's the petitioner's burden to prove that it's not counterfeit. It is not the government's burden. The government introduced the evidence. But I think, Judge Graber, your question about it's not just the fact that the petitioner here introduced counterfeit evidence. It's the fact that he continued, according to the immigration judge sustained by the BIA, to lie about that. He testified about that. And he was given ample opportunity to explain that. So quite unlike the petitioner in Chen who was found to be forthright, this petitioner, the same cannot be said. I just want to mention one point. There is an inconsistency in the forensic report. And it doesn't look like anybody's offered up a specific explanation to how it is the laminate can be genuine and not show any signs of having been switched from another card, yet the card itself is determined to be counterfeit. Do you have any other explanation for how that could be? The government has no explanation for how that could be. But I will just note that the government introduced a motion below saying that it was going to introduce this evidence. And petitioner did not object. At the hearing, there's actually an exchange where petitioner says, wait a second, this is, I think this is real. And the government's counsel pointed out that the petitioner never objected to that. And had he objected to that, the government would have made the preparer of that forensic report available for testimony. So I think any such objection was waived below. Well, it isn't really a question of objection. It's a question of whether the forensic report is so inconsistent internally that it can't rationally support the BIA's conclusion. That's really the question, not whether there's been an objection to it, but just looking at it as admitted what it tells us. May I finish the questions? Yes, please do. I believe that it's not so internally inconsistent. And it is not the government's burden to explain why. Perhaps one, I mean, if you look at that forensic document, you're seizing on just one piece of the laminate. But there are four findings before that, that it is a fake, it is a counterfeit, and provide, and reasons provided why. Namely, the seal is missing. And as we all know from identification documents on even a driver's license, when a seal is missing, that's an obvious sign of a counterfeit. So I would submit, the government would submit that merely the fact that the government cannot explain how there's laminate on it is not dispositive here. And there's certainly substantial evidence for the IJ to have found that the document was a counterfeit and no other result is compelled. And if one were, the government would like to bring a case to this Court's attention about why remand would be in order, if the panel were to disagree. Is that something that's been cited in your brief? That is not. It was only just decided by the Attorney General himself. He issued an Attorney General opinion. Okay. Would you, after the argument from the Deputy Clerk, I think she should have some sheets on which you can add that citation for the panel. Absolutely. I'd be happy to. And also, of course, for opposing counsel. Of course. Thank you. Thank you. Thank you. Mr. Sue, you have some time remaining? Okay. Thank you. The case just argued is submitted. We appreciate very much the arguments of both counsel. And the next case on the docket is United States Life Insurance Company v. Superior National Life Insurance Company. Thank you.
judges: Graber, Clifton, Shea